UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MURPHY, et al., | Case No. 26-cv-01569-WHO |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION TO REMAND** |
| COINBASE, INC., et al., | Re: Dkt. No. 15 |
| Defendants. | |

Plaintiffs Michael Murphy, Paul Zambito, James Martin, Kale Bittner, and John Aidan Carter move to remand this case to California state court, where they filed this complaint against defendants Coinbase, Inc. and Coinbase Global, Inc (together "Coinbase") regarding Coinbase's practices and representations around security and fraud on its platform. The defendants removed the case to federal court based on federal question jurisdiction. Each of plaintiffs' causes of action raises substantial and disputed questions of federal financial services law. This court has subject matter jurisdiction and the case must remain here. Plaintiffs' motion to remand is DENIED.

**BACKGROUND**

The following facts are alleged in the plaintiffs' complaint. Complaint ("Compl.") [Dkt. No. 1-1]. Coinbase, headquartered in San Francisco, California, operates a worldwide cryptocurrency exchange platform with "over 108 million verified users . . . including millions of California residents." *Id.* ¶¶ 3, 10. It serves as a custodian of digital assets, allowing for consumers to buy, sell, and store cryptocurrency directly on its platform, and collects fees from platform transactions. *Id.* ¶¶ 2, 22.

The plaintiffs, all Coinbase users, allege that each relied upon Coinbase's advertising— including representations that the company provides "the most trusted cryptocurrency platform,"

United States District Court
Northern District of California

"bank-level" or "industry-leading" security, and "24/7 live support" for account issues—in his decision to store cryptocurrency on the defendant's platform. *Id.* ¶¶ 22, 36. Plaintiffs assert that each lost digital assets in fraudulent transactions on the platform and that Coinbase provided little to no investigation and no relief for these transactions. *Id.* ¶¶ 4, 51, 68. In addition, the complaint alleges that Coinbase failed to notify affected individuals of data breaches, including "some involving Coinbase's own contractors," that left individuals whose data was leaked vulnerable to social engineering scams. *Id.* ¶¶ 24-28. Plaintiffs state that they lost "more than $1.8 million in digital assets as a direct result of Coinbase's systemic failures." *Id.* ¶ 68.

Plaintiffs brought suit against Coinbase in California state court citing two causes of action: (1) Violations of the Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750 *et seq.,* and (2) Violations of the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *et seq.*

Under the first cause of action, plaintiffs assert that Coinbase directly committed acts prohibited under CLRA section 1770 by: (i) "representing that its services possessed characteristics, uses, or benefits" that it did not provide (*i.e.*, "bank-level," "industry-leading" and "insured" security); (ii) "representing that its services were of a particular standard, quality, or grade" (*e.g.*, "bank-level" safeguards) when they were not; (iii) falsely advertising goods and services, including "24/7 live support" and "asset insurance," that it does not provide; and (iv) "representing that a transaction conferred rights, remedies, or obligations that it did not have or involve, by inserting contract clauses purporting to waive statutory rights to injunctive relief and to disclaim responsibility for unauthorized transfers." Compl. ¶ 74 (citing CAL. CIV. CODE §§ 1770(a)(5, 7, 9, 14)).

Plaintiffs further allege that Coinbase violated the CLRA by several material omissions, including failing to disclose to customers that "Coinbase routinely denies reimbursement for unauthorized transfers despite [Electronic Funds Transfer Act] obligations." *Id.* ¶ 75(c). They state that, based on Coinbase's representations, consumers are likely to be misled about the security of the platform and about the insufficient remedies Coinbase provides for unauthorized transactions, including the unavailability of human assistance to fraud victims. *Id.* ¶¶ 68-69.

2

Under the second cause of action, plaintiffs assert that Coinbase's conduct violated all three prongs of the UCL in that it involved unlawful, fraudulent, and unfair business practices. *Id.* ¶ 81. Plaintiffs state that the CLRA, the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*, Regulation E, 12 C.F.R. Part 1005, and California's Elder Financial Abuse laws, CAL. WELF. & INST. CODE §§ 15630 *et seq.*, comprise the legal predicates for their claim under the UCL's unlawful prong. *Id.* ¶ 82. For all three prongs, plaintiffs allege that the relevant improper business practices include "(a) advertising 'bank level security' while permitting contractor data leaks; (b) promoting '24/7 Live Support' that is, in fact, automated and inaccessible; (c) disclaiming liability for unauthorized transfers contrary to the EFTA; and (d) maintaining contract clauses that unlawfully waive the right to public injunctive relief under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)." *Id.* ¶ 83.

Plaintiffs primarily seek public injunctive relief. They request that Coinbase be enjoined from:

1) Advertising or representing that it provides "bank-level," "industry-leading," or "insured" security unless verified by independent audit;
2) Adopting and publishing policies that comply with Regulation E (12 C.F.R. § 1005.11) for investigating and, where required, re-crediting unauthorized fiat electronic fund transfers (including ACH, debit-card, and prepaid/"USD wallet" rails) associated with Coinbase accounts;[1]
3) Misrepresenting or concealing known data breaches or contractor disclosures of customer information;
4) Maintaining arbitration, waiver, or limitation-of-liability provisions that restrict statutory rights to public injunctive relief; and
5) Operating customer-support systems that prevent timely access to human assistance in security-compromise situations.

Compl., Prayer for Relief (A)(1)-(5). They also seek declaratory relief, corrective disclosures, and attorneys' costs and fees. *Id.*, Prayer for Relief (B)-(D).

On February 23, 2026, Coinbase removed this case to federal court, asserting that plaintiffs' complaint raised substantial federal questions regarding the application and scope of the

---

[1] The structure of the Prayer for Relief makes it appear that plaintiffs are seeking an injunction that enjoins Coinbase from adopting policies in compliance with Regulation E. Considering the complaint as a whole, I assume that this is a simple drafting error and that plaintiffs are seeking for a court to order Coinbase to affirmatively adopt these policies.

EFTA and Regulation E.  Notice of Removal [Dkt. No. 1].  On March 25, 2026, plaintiffs filed a motion to remand the matter back to state court.  Motion to Remand ("Mot.") [Dkt. No. 15]. Defendants opposed.  Opposition to Motion to Remand ("Oppo.") [Dkt. No. 19].  Plaintiffs replied.  Reply ISO Mot. to Remand ("Reply") [Dkt. No. 31].

## LEGAL STANDARD

### I.    Removal Jurisdiction

A defendant sued in state court may remove the action to federal court if the action could have been brought in federal court in the first instance.  28 U.S.C. § 1441(a).  Removal statutes are "strictly constructed against removal" and "any doubt is resolved against removability."  *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).  The defendant seeking removal bears the burden of establishing that removal is proper.  *Id.* at 1034.

If a plaintiff believes a case was improperly removed, he or she may file a motion to remand.  *See* 28 U.S.C. § 1447(c).  "A district court's subject matter jurisdiction is determined on the basis of the complaint at [the] time of removal, not as subsequently amended."  *Robles v. Gillig LLC*, 771 F. Supp. 2d 1181, 1183 (N.D. Cal. 2011).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

### II.    Subject Matter Jurisdiction: Federal Question

Federal courts have the authority to exercise "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  While federal question jurisdiction primarily applies to causes of action "created by federal law," there is "another longstanding, if less frequently encountered variety of federal 'arising under' jurisdiction."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  "In certain cases, federal question jurisdiction will lie over state law claims that implicate significant federal issues"—those that "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Id.*

The Supreme Court in *Grable* stated that the key question is whether a "state-law claim

necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.  In other words, federal jurisdiction is appropriate over a state law claim where "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  This type of jurisdiction covers only a "'special and small category' of cases." *Id.* (citation omitted).

### III.    Underlying State Law

Consumers may bring a claim under the CLRA when, in the course of a transaction for the sale or lease of goods and services, the vendor's use of at least one of the twenty-nine prohibited "unfair methods of competition and unfair or deceptive acts or practices" harms the consumer.  CAL. CIV. CODE §§ 1770, 1780.  The damage associated with the CLRA violation need not be pecuniary damages but must be separate from the harm of simply being "exposed to an unlawful practice." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009).  In other words, there must be some "tangible increased cost or burden to the consumer." *Id.* at 643.

Plaintiffs may advance a claim based on the UCL under three different prongs, namely whether a business's conduct was unlawful, fraudulent, or unfair.  CAL. BUS. & PROF. CODE §§ 17200 *et seq.*  Satisfying any one of the three prongs is sufficient to state a UCL claim. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.  In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.") (citations omitted).  A private party bringing a UCL claim must have suffered "injury in fact" and "lost money or property" as a result of the unfair competition. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011).

**DISCUSSION**

Plaintiffs challenge removal under three of the four *Grable* factors[2] arguing that: (i) no federal issue is necessarily raised because each claim may be sustained on "alternative, wholly state-law grounds"; (ii) any federal issues raised are not of substantial importance to the federal system as a whole but are "fact-bound" and "situation-specific"; and (iii) to exercise jurisdiction in this context would disrupt the federal-state balance of power because it would "federalize a massive category of California state consumer protection litigation." Mot. at 7-9. Plaintiffs additionally point to language in their complaint expressly disclaiming any attempt to plead a federal cause of action. *Id.* at 6.

Plaintiffs' mere statement that they did not intend to bring a federal claim is not sufficient to avoid federal jurisdiction if the complaint contains an underlying substantial federal question. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003), *as amended* (Sept. 22, 2003) ("[A]lthough the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim.") (citations omitted). "Under the 'artful pleading' doctrine, a court may recharacterize a plaintiff's claims as federal if the plaintiff has attempted to defeat removal by omitting to plead necessary federal questions." *In re: Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, 15-cv-09996, 2016 WL 1192642, at *3 (C.D. Cal. Mar. 28, 2016). This includes situations where "the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." *Id.*

While on its face plaintiffs' complaint raises only state law claims, application of the *Grable* factors reveals that plaintiffs lack sufficient basis for their state-law claims without the resolution of substantial questions of federal law. As such, the complaint falls within the small subsection of state law cases that raise necessary federal issues and are appropriate for federal jurisdiction, which is why plaintiffs' motion to remand must be denied.

---

[2] The parties do not appear to contest that the issues raised under federal law in this case are actually disputed. *See* Oppo. at 3 n.1.

United States District Court
Northern District of California

### I.    Federal Issues are "Necessarily Raised" by Plaintiffs' State Law Claims

The first question in the *Grable* analysis is whether the plaintiffs' state law claims necessarily raise a federal issue.  Federal issues are necessarily raised when a complaint "expressly invokes federal laws," *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1185 (9th Cir. 2022), or when federal law must be interpreted in a dispute to understand a party's rights or obligations under its scope.  *See Hornish v. King Cnty.*, 899 F.3d 680, 689-90 (9th Cir. 2018).  However, "[w]hen a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996); *see also Zuniga v. Safeway, Inc.*, No. 20-CV-4440-YGR, 2021 WL 63064, at *3 (N.D. Cal. Jan. 7, 2021) ("A claim supported by alternate theories is not sufficient for federal question jurisdiction unless federal law is essential to each of those theories.").

Plaintiffs assert that neither their CLRA claim nor their UCL claim necessarily raise issues of federal law because both can be sustained on wholly independent state law grounds.  Mot. at 7.  In particular, they argue that the conduct underlying both claims is primarily Coinbase's alleged misrepresentations about the security and capabilities of their platform that induced plaintiffs to store their assets on the site.  *Id.*; Compl. ¶¶ 74-77, 82.  Assessment of the claims based on this conduct, plaintiffs say, does not require reliance on federal law.

Coinbase counters that the true "gravamen" of plaintiffs' complaint is that Coinbase failed to investigate or reimburse the fraudulent transfers in violation of the EFTA and Regulation E.  Oppo. at 6-7.  It further asserts that both the CLRA and UCL require some form of tangible harm—in the case of the UCL, actual economic loss—and that the only tangible harm alleged by plaintiffs and connected to Coinbase is that they lost their assets in the fraudulent transfers and Coinbase would not reimburse them.  *Id.* at 7.

Coinbase's failure to investigate the fraudulent transfers and reimburse plaintiffs is a key part of the plaintiffs' grievances.  Compl. ¶¶ 47-48 (Coinbase denied reimbursement to Murphy and closed his customer service tickets without "recovery or explanation"); *id.* ¶ 55 (Coinbase

7

responded to Martin's complaint by "closing the matter without providing reimbursement, investigation, or any remedy"); *id.* ¶ 59 ("Coinbase offered no reimbursement and refused to assist Cipherblade, a professional asset-recovery service retained by" Bittner.); *id.* ¶ 65 (Coinbase "provided no restitution" to Cotter). And plaintiffs specifically invoke EFTA and Regulation E as the sources of Coinbase's duty to investigate and reimburse. *See id.* ¶ 5 ("Plaintiffs further rely on . . . 'EFTA'. . . as [a] statutory standard[] establishing Coinbase's duty to protect its customers from unauthorized transfers"); *id.* ¶ 50 ("Coinbase's refusal to investigate and re-credit unauthorized fiat transfers that funded or depleted Plaintiffs' Coinbase accounts violates the Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq.*) and Regulation E (12 C.F.R. Part 1005)"). Plaintiffs seek concrete relief directly related to these violations. Compl. ¶ 51 ("This systemic refusal to investigate and, where required, re-credit consumer USD accounts violates 12 C.F.R. § 1005.11 and constitutes an ongoing, deliberate course of conduct warranting public injunctive relief."); Compl., Prayer for Relief (A)(2) (seeking an injunction that requires "[a]dopting and publishing policies that comply with Regulation E (12 C.F.R. § 1005.11) for investigating and, where required, re-crediting unauthorized fiat electronic fund transfers (including ACH, debit-card, and prepaid/'USD wallet' rails) associated with Coinbase accounts").

Even where the references to federal law are not explicit, federal law permeates plaintiffs' claims. As one of the primary bases for their misrepresentation claims under both the CLRA and UCL, plaintiffs allege that Coinbase falsely represented that it had "bank-level" or "insured" security on its platform which the plaintiffs relied on in choosing to use the Coinbase platform. *See, e.g.*, Compl. ¶ 2 ("Coinbase's deceptive assurances of 'bank-level security' have induced millions of ordinary customers . . . to entrust billions of dollars in savings to an unregulated, uninsured trading platform."); ¶ 30 (Murphy trusted Coinbase's "security assurances," which "emphasized Coinbase's role as a secure, U.S.-based custodial platform, highlighted that the overwhelming majority of customer funds were held offline in cold storage, and described bank-style safeguards for customer accounts."); ¶ 31 (Zambito relied on Coinbase's website which "described Coinbase as a trusted exchange for buying and selling digital currency, touted 'secure storage' of customer assets, and represented that customer funds were protected by bank-style

8

security measures and insured fiat rails."); ¶ 32 (Martin chose to invest in Coinbase which, at the time, "described itself as 'the safest place to buy, sell, and store crypto,' promoted 'bank level' and 'industry-leading' protection for customer funds, and represented that customers had access to support around the clock for account-security problems."); ¶ 33 (Bittner relied on Coinbase's description "as a trusted, secure exchange, emphasizing that customer digital assets were held in secure storage with bank-style safeguards, and that U.S.-dollar balances were maintained with insured financial institutions.); ¶ 34 (Cotter trusted Coinbase's website which "described Coinbase as 'the safest place to buy, sell and store crypto,' highlighted 'bank-level security' and 'industry-leading protection,' and represented that Coinbase provided 24/7 assistance for account-security issues."). Plaintiffs offer no legal predicate on which a court would rely to interpret what would constitute appropriate "bank-style safeguards" or "bank-level" security other than its references to federal law.

Taken as a whole, these allegations make clear that federal law forms an intrinsic and necessary part of both plaintiffs' UCL and CLRA claims. While "California district courts have held that mere references to federal law . . . do not convert the claim into a federal cause of action," *Nevada v. Bank of America Corporation*, 672 F.3d 661, 675 (9th Cir. 2012) (quotation omitted), a federal issue is necessarily raised where a claim actually turns on the resolution of a federal issue. *See Cnty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1026 (N.D. Cal. 2005) (concluding that the UCL claims raised a federal issue because "the only reasons [plaintiff] ha[d] given for believing that defendants behaved unfairly or fraudulently were that they failed to give required discounts [under federal law]."); *see also In re: Nat'l Football Leagues*, 2016 WL 1192642 at *4 (finding CLRA claim necessarily raised federal questions where claim would "fail as a matter of law" if allegations implicating federal law were removed).

The entire crux of plaintiffs' claim is based on the assertion that Coinbase failed to comply with its obligations under the EFTA and Regulation E. While plaintiffs argue that they state independent misrepresentation claims, those claims, as described above, require looking to federal law to understand the standards that Coinbase represented it had in place to protect consumers. Furthermore, plaintiffs' only theory of tangible harm is connected to Coinbase's failure to

United States District Court
Northern District of California

investigate and reimburse them, aside from a confusing reference to "informational injury." Compl. ¶¶ 11, 85. As both the CLRA and UCL require this type of harm to state a claim, the claims cannot proceed absent an interpretation of Coinbase's obligations under federal law. Plaintiffs do not directly address this challenge in their reply, stating only that economic loss is not relevant because they are not seeking restitution or damages, only an injunction. Reply at 6. However, the tangible loss element is a requirement to state a claim under either statute; the remedy sought has no bearing on this requirement.

The authority cited by plaintiffs does not indicate a different outcome. "[I]f plaintiff's allegations under the unfair prong rely solely on a theory that liability stems from violation of federal law, then federal question jurisdiction must attach." *Moralez v. Kern Schools Federal Credit Union*, 15-cv-01444, 2016 WL 2756427, at *4 (E.D. Cal. May 12, 2016). In both *Moralez* and *Pierce*, the court granted remand because plaintiff alleged a theory of harm that did not require any "reliance on federal law". *See id.* at 5; *see also Pierce v. Safe Credit Union*, 20-cv-985, 2020 WL 4048507, at *3 (E.D. Cal July 20, 2020).

Furthermore, unlike the defendant credit unions in *Moralez* and *Pierce*, Coinbase does not have well-established obligations under the EFTA as a bitcoin platform, at least as of now. *See infra* Section II. The present case is better analogized to the circumstances in *Hornish*, where a property dispute that required interpreting the scope of the federal Trails Act justified federal jurisdiction. 899 F.3d at 689-91.

In *Hornish*, plaintiff landowners sought a declaration of their property rights in the abutting railroad corridor after the county, which had assumed sponsorship under the Federal Trails Act, began the process of paving it into a trail. *Id.* at 686-87. In particular, their complaint requested a declaration from the court that "King County only acquired a surface easement for a hiking and biking trail with the possible reactivation of a railroad pursuant to the Trails Act." *Id.* at 689. Because the court needed to "determine whether the Trails Act creates, supplements, or replaces any previously existing railroad easement" to resolve the dispute, federal jurisdiction necessarily arose from the language of the complaint. *Id.* at 690. Here, resolution of plaintiffs' claims would require the court to interpret the EFTA and Regulation E and to determine the scope

of their application to Coinbase's operations.

Central to the resolution of this dispute is interpreting what obligations Coinbase has under federal law and whether it has violated them. Because plaintiffs' entitlement to relief depends on these interpretations, federal issues are necessarily raised by plaintiffs' claims.

## II.    The Federal Issues Raised in Plaintiffs' Claims are "Substantial"

"For a federal issue to be substantial, 'it is not enough that the federal issue be significant to the particular parties in the immediate suit[,]' rather, '[t]he substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole.'" *Kripke v. Safeway, Inc.*, No. 18-CV-02808-WHO, 2018 WL 3491903, at *9 (N.D. Cal. July 20, 2018) (quoting *Gunn*, 568 U.S. at 260). Plaintiffs argue that there is no substantial federal issue because their claims are based on "the specific facts of these Plaintiffs' experiences" and "[a]ny interpretation of the EFTA that might arise . . . would not establish a controlling federal precedent." Mot. at 8.

Coinbase contends, on the other hand, that the claims "require an interpretation of . . . federal provisions that would impact other cryptocurrency exchanges, financial institutions, and consumers nationwide, not merely the parties to this case" and thus addresses a dispute over the scope of a federal statute that specific federal agencies have been authorized to enforce. Oppo. at 9. It further notes that resolution would likely also require a determination as to whether the EFTA and Regulation E apply to crypto transactions in the first place which is currently an unsettled point of law. *Id.*

The impact of resolving the federal questions in this matter will extend beyond the specific facts of the case. The application of federal financial services statutes to cryptocurrency presents new, unaddressed legal challenges. In January 2025, the Consumer Financial Protection Bureau released a proposed interpretive rule that would extend EFTA protections to cryptocurrency transactions, but this has not been formally adopted.[3]  Courts in the Southern District of New York

---

[3] Electronic Fund Transfers Through Accounts Established Primarily for Personal, Family, or Household Purposes Using Emerging Payment Mechanisms (Electronic Fund Transfer Act; Regulation E), 90 Fed. Reg. 3723 (proposed Jan. 10, 2025) (available at https://www.consumerfinance.gov/rules-policy/notice-opportunities-comment/archive-closed/electronic-fund-transfers-through-accounts-established-primarily-for-personal-family-or-household-purposes-using-emerging-payment-mechanisms-electronic-fund-transfer-act-

have disagreed on whether the language of the EFTA excludes cryptocurrency transactions. *Nero v. Uphold HQ Inc.*, 688 F. Supp. 3d 134, 141-46 (2023); *see also Rider v. Uphold HQ Inc.*, 657 F. Suppl. 3d 491, 497-99 (S.D.N.Y. Feb. 22, 2023) (denying dismissal of an EFTA claim against a cryptocurrency exchange); *but see Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 342-43 (S.D.N.Y. February 22, 2023) (dismissing EFTA claim on cryptocurrency transactions when the plaintiff failed to establish his account met statutory requirements). While "the Supreme Court has cautioned against finding federal question jurisdiction on the ground that a case presents a novel issue of federal law," *Nevada*, 672 F.3d at 675, this case addresses both a deeply unsettled area of law and one that implicates important federal regulatory interests. Resolution of the federal questions here would have a substantial impact on the federal system as a whole.

### III. Adjudication in Federal Court Will Not Upset the Federal-State Balance

The last factor under *Grable* considers "the appropriate 'balance of federal and state judicial responsibilities.'" *Gunn*, 568 U.S. at 264. The Supreme Court has noted that "in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986). "Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress . . . there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Grable,* 545 U.S. at 314.

Plaintiffs assert that allowing this case to remain in federal court would significantly disrupt the federal-state balance because it would open the door to removal of numerous UCL claims that use federal statutes as a predicate and would "displace the traditional role of California state courts in adjudicating consumer protection claims under the CLRA and UCL." Mot. at 9. Coinbase argues that federal courts routinely entertain cases involving state law claims with underlying federal issues and that this comports with Congress's intent to ensure that parties are regulated uniformly across the country under the EFTA. Oppo. at 10-11.

regulation-e/).

I conclude that allowing this case to remain in federal court would not disrupt the federal-state balance of power. Despite plaintiffs' characterization, this case is not simply about "adjudicating [state] consumer protection claims," but involves significant questions of federal financial services law. And while it is true that "[s]tate courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes," *Nevada*, 672 F.3d at 676, it is also true that such claims are also "already endemic in federal court," *Astra*, 401 F. Supp. 2d at 1029. I am unpersuaded that allowing this case to proceed in federal court would significantly alter the state-federal balance related to these types of claims.

As all four *Grable* factors are satisfied, exercising federal jurisdiction under the federal question doctrine is appropriate. I DENY plaintiffs' motion to remand.

### IV.    Attorneys' Fees

Because this case will remain in federal court, plaintiffs lack justification to request attorneys' fees on this motion. Accordingly, plaintiffs' request for attorneys' fees is DENIED.

### CONCLUSION

For these reasons, the motion to remand is DENIED. The case shall remain in federal court.

**IT IS SO ORDERED.**

Dated: June 22, 2026

William H. Orrick
United States District Judge

13